UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 2:16-CV-00190 |
| | ) | (LEW) |
| | ) | |
| v. | ) | |
| | ) | CONSENT DECREE |
| | ) | |
| | ) | |
| GRIMMEL INDUSTRIES, INC., | ) | |
| GRIMMEL INDUSTRIES L.L.C., | ) | |
| and GARY GRIMMEL, | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:16-CV-00191 |
| | ) | (LEW) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| KENNEBEC SCRAP IRON, INC., | ) | |
| | ) | |
| Defendant. | ) | |

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................. 1
II.     APPLICABILITY ..................................................................................... 2
III.    DEFINITIONS ......................................................................................... 2
IV.     DISMISSAL OF GARY GRIMMEL ....................................................... 4
V.      CIVIL PENALTY .................................................................................... 4
VI.     COMPLIANCE REQUIREMENTS ......................................................... 5
VII.    REPORTING REQUIREMENTS ............................................................. 6
VIII.   STIPULATED PENALTIES .................................................................... 8
IX.     FORCE MAJEURE ................................................................................. 9
X.      DISPUTE RESOLUTION ...................................................................... 11
XI.     INFORMATION COLLECTION AND RETENTION ........................... 12
XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................. 13
XIII.   COSTS ................................................................................................... 14
XIV.    NOTICES ............................................................................................... 14
XV.     EFFECTIVE DATE ................................................................................ 16
XVI.    RETENTION OF JURISDICTION ........................................................ 16
XVII.   MODIFICATION .................................................................................... 16
XVIII.  TERMINATION ..................................................................................... 16
XIX.    PUBLIC PARTICIPATION ................................................................... 16
XX.     SIGNATORIES/SERVICE .................................................................... 17
XXI.    INTEGRATION ..................................................................................... 17
XXII.   FINAL JUDGEMENT ............................................................................ 17
XXIII.  APPENDIX ............................................................................................ 18
XXIII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ...................... 18

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), filed the above-captioned actions against Grimmel Industries, Inc., Grimmel Industries, L.L.C., Gary Grimmel, and Kennebec Scrap Iron, Inc. (collectively, "Defendants"), under Sections 309(d) and 311(b)(7)(C) of the Clean Water Act (the "Act"), 33 U.S.C. §§ 1319(d), 1321(b)(7)(C), alleging that the Defendants violated permits issued by the State of Maine under Section 402 of the Act, 33 U.S.C. § 1342, governing stormwater discharges from their facilities located in Topsham, Maine ("Topsham Facility"), Lewiston, Maine ("Lewiston Facility"), and Oakland, Maine ("Oakland Facility") (collectively, "Facilities"), as well as violations of the Spill Prevention Control and Countermeasure Plan ("SPCC") regulations related to the handling of oil at the Facilities found at 40 C.F.R. Part 112;

WHEREAS, on May 7, 2019, the Court consolidated the actions;

WHEREAS, as set forth below, upon entry of this Consent Decree by the Court, Gary Grimmel will be dismissed as a Defendant in accordance with the terms set forth in Section IV below;

WHEREAS, EPA acknowledges Defendants' efforts, including the commitment of significant financial and human resources, to comply with the applicable laws and regulations;

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaints, and this Consent Decree shall not be construed as proof of any allegations in the Complaints of wrongdoing under the Clean Water Act;

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest; and

WHEREAS, the Parties are confident they can and will work cooperatively on the implementation of the Consent Decree and on regulatory matters in the future;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.     JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Sections 309(b) and 311(b)(7)(C) of the Act, 33 U.S.C. §§ 1319(b), 1321(b)(7)(C), and over the Parties.  Venue lies in this District pursuant to 33 U.S.C. §§ 1319(b), 1321(e)(2), 28 U.S.C. §§ 1391(b) or (c), and/or 1395(a).  For purposes of this Decree, or any action to enforce this Decree, Settling Defendants consent to the Court's jurisdiction over this Decree and any such action and over Settling Defendants, and consent to venue in this judicial district.

2. For purposes of this Consent Decree only, Settling Defendants agree that the Complaints state claims upon which relief may be granted pursuant to Sections 309(b) and (d), 311(b)(7), and 402 of the Act, 33 U.S.C. §§ 1319(b) and (d), 1321(b)(7), and 1342.

## II.      APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States and upon Settling Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4. No transfer of ownership or operation of any of the Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Settling Defendants of their obligation to ensure that the terms of the Decree are implemented.  At least 30 days prior to any such transfer during the term of this Consent Decree, Settling Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Department of Justice, in accordance with Section XIV of this Decree (Notices).  Any attempt to transfer ownership or operation of any of the Facilities during the term of this Consent Decree without complying with this Paragraph constitutes a violation of this Decree.

5. Settling Defendants shall provide a copy of this Consent Decree to all officers employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Settling Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6. In any action to enforce this Consent Decree, Settling Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.      DEFINITIONS

7. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree.  Terms defined elsewhere in this Consent Decree shall have the meaning so provided.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Best Management Practices" or "BMPs" shall mean stormwater best management practices, as required to be implemented, inspected, maintained, and/or replaced under the Maine MSGP;

"Complaints" shall mean the complaints filed by the United States in these consolidated actions;

"Consent Decree" or "Decree" shall mean this Decree and all Appendices attached hereto listed in Section XXIII;

"Date of Lodging" shall mean the date the Decree is lodged with the Court;

"Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendants" shall mean Grimmel Industries, Inc., Grimmel Industries L.L.C., Gary Grimmel, and Kennebec Scrap Iron, Inc.;

"Effective Date" shall have the definition provided in Section XV;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Lewiston Facility" shall mean the metal recycling facility at 50 River Road, Lewiston, Maine;

"Lewiston Facility Stormwater Pollution Prevention Plan" or "Lewiston SWPPP" shall mean the stormwater pollution prevention plan for the Lewiston Facility as required to be developed, implemented, inspected, maintained, reviewed, revised, and/or replaced under the Maine MSGP;

"Maine MSGP" shall mean the Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity issued by the State of Maine Department of Environmental Protection on December 8, 2016 (MEPDES Permit #MER050000);

"Oakland Facility" shall mean the metal recycling facility at 48 Broomhandle Road, Oakland, Maine;

"Oakland Facility Stormwater Pollution Prevention Plan" or "Oakland SWPPP" shall mean the stormwater pollution prevention plan for the Oakland Facility as required to be developed, implemented, inspected, maintained, reviewed, revised, and/or replaced under the Maine MSGP;

"Outfall" shall mean the outfall, stormwater sampling location, and/or discharge point as identified within the respective Facility's SWPPP;

"Paragraph" or "¶" shall mean a portion of this Decree identified by an arabic numeral;

"Parties" shall mean the United States and Defendants;

"Section" shall mean a portion of this Decree identified by a roman numeral;

"Settling Defendants" shall mean Grimmel Industries, Inc., Grimmel Industries, L.L.C., and Kennebec Scrap Iron, Inc.;

"Topsham Facility" shall mean the metal recycling facility at 80 Pejepscot Village, Topsham Maine;

"Topsham Facility Stormwater Pollution Prevention Plan" or "Topsham SWPPP" shall mean the stormwater pollution prevention plan for the Topsham Facility as required to be developed, implemented, inspected, maintained, reviewed, revised, and/or replaced under the Maine MSGP;

"Topsham Outfall 001" shall mean the sampling location for Drainage Area 1 as identified in Section 1.4 of the Topsham 2018 SWPPP;

"Topsham Outfall 002" shall mean the sampling location for Drainage Area 2 as identified in Section 1.4 of the Topsham 2018 SWPPP;

"Topsham 2018 SWPPP" shall mean the stormwater pollution prevention plan prepared for the Topsham Facility dated January 31, 2018; and

"United States" shall mean the United States of America, acting on behalf of and including EPA and any successor departments, agencies, or instrumentalities of the United States.

## IV.    DISMISSAL OF GARY GRIMMEL

8.  In accordance with Federal Rule of Civil Procedure 41(a)(1)(ii), the United States and Defendants stipulate, and this Court agrees, to the dismissal of Defendant Gary Grimmel without prejudice.  However, Gary Grimmel shall be entitled to the benefits of the covenant not to sue, as provided in Paragraph 59, subject to the provisions of Paragraphs 60–62.

## V.    CIVIL PENALTY

9. Within 60 Days after the Effective Date of this Consent Decree, Settling Defendants shall pay the sum of $250,000 as a civil penalty, together with interest accruing from the Effective Date, at the rate specified in 28 U.S.C. § 1961 as of the Effective Date.  Settling Defendants are jointly and severally liable for the payment of the civil penalty.

10. $25,000 of the civil penalty shall be allocated to the Oil Spill Liability Trust Fund for the violations of SPCC regulations, and $225,000 shall be allocated to EPA for the balance of the Clean Water Act violations.

11. Settling Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Settling Defendants, following the Effective Date of the Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Maine.  At the time of payment, Settling Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter.  The transmittal letter shall: state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. Grimmel Industries, Inc., et al.; refer to the DOJ case number 90-5-1-1-11209; and indicate that a portion of the payment is made toward Clean Water Act civil penalties to be deposited into the Oil Spill Liability Trust Fund under 33 U.S.C. § 1321(s), § 4304 of Pub. L. No. 101-380, and 26 U.S.C. § 9509(b)(8).  The transmittal letter shall be sent to the United States and EPA in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

    EPA Cincinnati Finance Office
    26 Martin Luther King Drive
    Cincinnati, Ohio 45268

4

and a copy to:

> National Pollution Funds Center
> United States Coast Guard
> 2703 Martin Luther King, Jr. Ave SE
> Washington, D.C. 20593-7605

12. Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal income taxes.

## VI.    COMPLIANCE REQUIREMENTS

13. Settling Defendants shall comply with all applicable requirements of statutes, regulations, permits, or other legal requirements alleged to have been violated in the Complaints with respect to the Facilities.  Settling Defendants shall not challenge the applicability of the Maine MSGP or the Act to any of the Facilities during the remaining term of the Maine MSGP.

14. Settling Defendants shall comply with the requirements of the Maine MSGP to test for TPH as part of benchmark monitoring, by relying on sampling already conducted and/or conducting new sampling.

15. Timing of Stormwater Sampling: Settling Defendants shall use the following procedures when collecting stormwater samples for the purpose of benchmark monitoring, to the extent it is required, and quarterly visual monitoring from each Outfall at the Facilities:

a.    Except at Topsham Outfall 001, Settling Defendants shall, whenever practicable, collect stormwater samples within the first sixty (60) minutes of the beginning of a discharge during a qualifying storm event, consistent with the procedures required by Special Conditions B.14, N.1, N.3, and N.4 of the Maine MSGP.  In no event shall Settling Defendants sample more than 2.25 hours from the beginning of a discharge during a qualifying storm event.

b.    At Topsham Outfall 001, Settling Defendants shall collect stormwater samples within 30 minutes of when Settling Defendants are required to collect stormwater samples from Topsham Outfall 002 during a qualifying storm event.

c.    Settling Defendants shall only collect samples when there has not been a prior qualifying storm event within the past 72 hours.

16. At the Topsham Facility, Settling Defendants shall revise the SWPPP to describe the maintenance and inspection procedures for the pumps located in the basement of the old factory building that are used as part of Settling Defendants' stormwater BMPs.

5

17. Settling Defendants shall conduct benchmark monitoring, to the extent that it is required, and visual monitoring at a location that is no further from River Road than the approximate mid-point of the driveway of the Lewiston Facility.

18. Within 90 Days of the Effective Date, Settling Defendants shall investigate and confirm the flow path of stormwater that discharges through Topsham Outfall 002 and Settling Defendants shall, within 90 Days of the Effective Date, revise the Topsham SWPPP to include the results of this investigation and provide a clear narrative in the SWPPP of this flow path. Such narrative shall include an explanation concerning when the gate valve located at Catch Basin 4 is in the closed position, when the pumps in the pump chamber are operated, and who controls both the valve and the pumps.

19. Settling Defendants shall establish a routine maintenance schedule such that each catch basin, including Catch Basin 4 at the Topsham Facility, is cleaned out as required by Special Condition H.3.d of the Maine MSGP.

20. Within 90 Days of the Effective Date, Settling Defendants shall update the SWPPPs for the Facilities in accordance with the procedures specified by Paragraphs 14–19 and Appendix A of this Decree. Within 90 Days of the Effective Date, Settling Defendants shall submit to EPA in accordance with Section XIV (Notices) copies of the updated SWPPPs.

21. Settling Defendants shall implement their SWPPPs consistent with the procedures specified by Paragraphs 14–19 and Appendix A.

22. Permits. Where any compliance obligation under this Section requires Settling Defendants to obtain a federal, state, or local permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Settling Defendants may seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Settling Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VII.    REPORTING REQUIREMENTS

23. Settling Defendants shall submit the following reports for all Facilities during the term of this Consent Decree:

a.    By January 31 and July 31 of each calendar-year after the Date of Lodging, until termination of the current Maine MSGP by the Maine Department of Environmental Protection, Settling Defendants shall submit by email to EPA a semi-annual report for the preceding six-month period that shall include visual monitoring results, benchmark monitoring results as required, and any corrective action documentation required by the Maine MSGP to be retained by the Settling Defendants.

b.    Within 90 days of the Effective Date, Settling Defendants shall notify EPA concerning whether the projects required by Paragraphs 14–20 have been completed

and shall submit documentation, including but not limited to photographs, demonstrating compliance with these Paragraphs of the Decree in accordance with Section XIV (Notices) of this Decree.

24. If Settling Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Settling Defendants shall notify the United States of such violation and its likely duration, in writing, within 10 business Days of the Day Settling Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Settling Defendants shall so state in the report. Settling Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Settling Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Settling Defendants of their obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

25. Whenever any violation of this Consent Decree or of the Maine MSGP or any other event affecting Settling Defendants' performance under this Decree, may pose an immediate threat to the public health or welfare or the environment, Settling Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Settling Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph and any notification required by any federal, state, or local statute, law, or regulation.

26. Each report submitted by Settling Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

27. The reporting requirements of this Consent Decree do not relieve Settling Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement including, without limitation, the Maine MSGP.

28. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

29. Settling Defendants shall be jointly and severally liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

30. Late Payment of Civil Penalty: If Settling Defendants fail to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Settling Defendants shall pay a stipulated penalty of $4,000 per Day for each Day that the payment is late.

31. Settling Defendants shall pay a stipulated penalty of $500 per day for each violation of the actions to be performed under Paragraphs 14–17, 19, and 21.

32. Compliance Milestones:  The following stipulated penalties shall accrue per violation per Day for each violation of the deadlines identified in Paragraphs 18 and 20:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750 | 1st through 14th Day |
| $1,250 | 15th through 30th Day |
| $1,750 | 31st Day and beyond |

33. Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $300 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $1,000 | 31st Day and beyond |

34. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

8

35. Settling Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

36. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

37. Stipulated penalties shall continue to accrue as provided in Paragraph 34, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Settling Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Settling Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

38. Settling Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

39. If Settling Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Settling Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Settling Defendants' failure to pay any stipulated penalties.

40. Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Settling Defendants' violation of this Consent Decree or applicable law.

## IX.   FORCE MAJEURE

41. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation.  The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure and

best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. Force Majeure does not include Settling Defendants' financial inability to perform any obligation under this Consent Decree.

42. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by Force Majeure, Settling Defendants shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when Settling Defendants first knew that the event might cause a delay. Within 7 days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to Force Majeure if they intend to assert such a claim; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to Force Majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

43. If EPA agrees that the delay or anticipated delay is attributable to Force Majeure, the time for performance of the obligations under this Consent Decree that are affected by Force Majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by Force Majeure shall not, of itself, extend the time for performance of any other obligation. EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by Force Majeure.

44. If EPA does not agree that the delay or anticipated delay has been or will be caused by Force Majeure, EPA will notify Settling Defendants in writing of its decision.

45. If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by Force Majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 41 and 42, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

X.   <u>DISPUTE RESOLUTION</u>

46. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

47. <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Settling Defendants send the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Settling Defendants invoke formal dispute resolution procedures as set forth below.

48. <u>Formal Dispute Resolution</u>.  Settling Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Settling Defendants' position and any supporting documentation relied upon by Settling Defendants.

49. The United States shall serve its Statement of Position within 45 Days of receipt of Settling Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Settling Defendants, unless Settling Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

50. Settling Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Settling Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

51. The United States shall respond to Settling Defendants' motion within the time period allowed by the Local Rules of this Court.  Settling Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

52. <u>Standard of Review</u>

a.   <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 48 pertaining

11

to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Settling Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

      b.    <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 48, Settling Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree by a preponderance of the evidence.

      53. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 37.  If Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.   INFORMATION COLLECTION AND RETENTION

      54. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facilities, at all reasonable times, upon presentation of credentials, to:

      a.    monitor the progress of activities required under this Consent Decree;

      b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.    obtain samples and, upon request, splits of any samples taken by Settling Defendants or their representatives, contractors, or consultants;

      d.    obtain documentary evidence, including photographs and similar data; and

      e.    assess Settling Defendants' compliance with this Consent Decree.

      55. Upon request, Settling Defendants shall provide EPA, or its authorized representatives, splits of any samples taken by Settling Defendants or their consultant.  Upon request, EPA shall provide Settling Defendants or the consultant splits of any samples taken by EPA.

56. Until five years after the termination of this Consent Decree, Settling Defendants shall retain, and shall instruct their consultants, contractors, and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their consultants', contractors', or agents' possession or control, or that come into their or their consultants', contractors', or agents' possession or control, and that relate in any manner to Settling Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Settling Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

57. Settling Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Settling Defendants seek to protect as CBI, Settling Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

58. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Settling Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

59. In consideration of the payment of the penalty required by Paragraph 9 and the performance of the obligations described in Section VI, the United States covenants not to sue or to take administrative action against Defendants under Sections 309(b), 309(g), or 311(b)(6)–(7)(C) of the Act, 33 U.S.C. §§ 1319(b), 1319(g) and 1321(b)(6)–(7)(C), for civil violations at the Facilities, through the Date of Lodging, of the conditions, limitations and requirements of the Multi-Sector General Permit for Stormwater Discharge Associated with Industrial Activity issued by the State of Maine or of the SPCC regulations promulgated at 40 C.F.R. Part 112.

60. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 59.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 59.

61. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facilities or Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant

case, except with respect to claims that have been specifically resolved pursuant to Paragraph 59 of this Section.

62. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Settling Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Settling Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Settling Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1251 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

63. This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

64. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XIII.   COSTS

65. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Settling Defendants.

XIV.   NOTICES

66. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing through email and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-11209
Eescdcopy.enrd@usdoj.gov

and

14

<u>To EPA</u>:
Environmental Protection Agency
Region I
Water Compliance Section (Mail Code 4-4)
Attn: Alex Rosenberg
5 Post Office Square
Boston, MA 02109
Rosenberg.Alex@epa.gov


<u>To Defendants</u>:

Grimmel Industries, Inc.
80 Pejepscot Village
Topsham, ME 04086
Phone: (207) 729-1691

*With copies to:*

Donald L. Anglehart
Law Office of Donald L. Anglehart, LLC
One Broadway, 14th Floor
Cambridge, MA 02142
Phone: (617) 943-2325
danglehart@anglehart.com

and

William E. Taylor
254 Commercial Street
Merrill's Wharf
Portland, ME 04101
Phone: (207) 791-1213
Wtaylor@pierceatwood.com

67. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

68. Where an email address is provided, notices submitted pursuant to this Section shall be deemed submitted upon emailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

69. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.    RETENTION OF JURISDICTION

70. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.   MODIFICATION

71. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

72. Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 52, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

73. After Settling Defendants have completed the requirements of Paragraphs 18 and 20 of this Decree, have thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of 36 months, have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, and have submitted a signed certificate of compliance with this Decree and the Act, Settling Defendants may serve upon the United States a Request for Termination, stating that Settling Defendants have satisfied these requirements, together with all necessary supporting documentation.

74. Following receipt by the United States of Settling Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Settling Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

75. If the United States does not agree that the Decree may be terminated, Settling Defendants may invoke Dispute Resolution under Section X of this Decree. However, Settling

16

Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 48 of Section X, until 60 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

76. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

77. Each undersigned representative of Defendants and the Deputy Section Chief of the Environmental Enforcement Section of the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

78. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.   INTEGRATION

79. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.   FINAL JUDGEMENT

80. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

## XXIII. <u>APPENDIX</u>

81. The following Appendix is attached to and incorporated into this Decree:

"Appendix A" summarizes the required edits to be made to the Topsham SWPPP, Lewiston SWPPP, and/or Oakland SWPPP in accordance with this Decree.

## XXIV. <u>26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION</u>

82. For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability) Paragraph 5; Section VI (Compliance Requirements) Paragraphs 13–21; Section VII (Reporting Requirements) Paragraphs 23 and 25; and Section XI (Information Collection and Retention) Paragraphs 54–56, is restitution or required to come into compliance with law.

Dated this 15th day of April, 2020.


/s/LANCE E. WALKER
UNITED STATES DISTRICT JUDGE

**FOR THE UNITED STATES OF AMERICA:**

2/10/2020
Date

ELLEN M. MAHAN
Deputy Section Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

2/10/2020
Date

DONALD G. FRANKEL
Senior Counsel
NATALIE G. HARRISON
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
Washington, DC 20044-7611

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:**

2/3/20
Date

CARL F. DIERKER
Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region I
5 Post Office Square – Suite 100
Boston, MA 02109-3912

**FOR GRIMMEL INDUSTRIES, INC.:**

1/29/2020
————————————
Date

/s/ Gary T. Grimmel
————————————————————
Gary T. Grimmel

**FOR GRIMMEL INDUSTRIES, LLC:**

1/29/2020
_____
Date

/s/ Gary T. Grimmel
_____

Gary T. Grimmel

**FOR GARY GRIMMEL:**


 1/29/2020                     /s/ Gary T. Grimmel
Date                           Gary T. Grimmel

**FOR KENNEBEC SCRAP IRON, INC.:**

1/29/2020
Date

/s/ Gary T. Grimmel

Gary T. Grimmel

**APPENDIX A: UPDATES TO FACILITIES' SWPPPS AND IMPLEMENTATION OF SWPPP REQUIREMENTS**

1. <u>All Facilities' SWPPPs</u> (Topsham, Lewiston, Oakland)

    a. Settling Defendants shall revise SWPPPs to indicate that quarterly benchmark and visual monitoring samples are to be collected within the first sixty (60) minutes of the beginning of a discharge during a qualifying storm event.  If a sample cannot be collected within the first 60 minutes, Settling Defendants must document in the SWPPP with inspection forms the reason(s) or circumstances why it was not practicable to obtain a timely sample. In no event shall Settling Defendants collect samples more than 2.25 hours from the beginning of a discharge.

    b. When benchmark exceedances are observed at any facility, Settling Defendants shall revise the SWPPP to include a narrative describing any specific actions taken to mitigate those exceedances.

    c. Settling Defendants shall revise SWPPPs to ensure that pH samples are tested within 15 minutes of collection, consistent with 40 C.F.R. Part 136 (e.g., use an on-site pH meter for this purpose).

2. <u>Topsham Facility SWPPP</u>

    a. Settling Defendants shall revise Sections 3.1.2 and 3.1.4 for consistency as to where vehicle maintenance is performed (inside a maintenance building or adjacent to a storage building).  If any vehicle or equipment maintenance is exposed to stormwater, Settling Defendants shall include this industrial activity on the SWPPP site map.

    b. The Topsham 2018 SWPPP states that the Topsham Facility's 2018 SPCC Plan was scheduled to be updated in Spring 2018.  Settling Defendants shall provide the most recent updated SPCC Plan when submitting the Topsham SWPPP in accordance with Paragraph 20 of the Consent Decree.

    c. Settling Defendants shall revise Section 7.3 of the SWPPP, and Sections 2.0, 2.3, and 2.4 of the associated MSGP Compliance Guide (Attachment 4) for consistency with the Maine MSGP Special Condition N.2, which requires quarterly routine facility inspections with at least one conducted each calendar year when a stormwater discharge is occurring.

    d. Settling Defendants shall revise Section 7.6 of the SWPPP and the MSGP Stormwater Compliance Guide (Attachment 4) Sections 2.0 (footnote 6) and 3.1.1, for consistency regarding the maintenance schedule for absorbent socks and similar BMPs.  Settling Defendants shall include in the SWPPP an explanation of the disposal method for all absorbent socks and debris captured in catch basin inserts.

e. Settling Defendants shall implement silt sacks or similar BMPs in catch basins as described in Section 3.2.1.2 and properly dispose of sediment collected in the sacks to prevent discharge of the collected sediment.

f. For dumpsters containing turnings exposed to cutting fluids and potentially exposed to stormwater as described in Section 2.1.2 of the Topsham 2018 SWPPP, Defendants shall routinely inspect such covered dumpsters to ensure that they comply with Appx. N.2.1 and N.3.1.3 of the Maine MSGP.

g. Settling Defendants shall revise the SWPPP to reflect:

   i. at least weekly sweeping or scraping of the material loading area and stockpile area around the shredder with the use of hand brooms or rubber scrapers unless inclement weather precludes such sweeping/scraping; and
   ii. sweeping of internal facility roads on an at least weekly basis using the hydraulic sweeper, unless inclement weather precludes such sweeping.
   iii. Settling Defendants shall properly dispose of any sediment collected by sweeping/scraping.

h. Settling Defendants shall revise the SWPPP site map to include stormwater flow paths and location of industrial activities that are exposed to precipitation for the following locations:
   i. The northern portion of the site where piles of shredded scrap were observed between the railroad tracks and the Androscoggin River;
   ii. The southern portion of the site where the decommissioned wastewater treatment plant is located and where the dumpsters to the east of the decommissioned wastewater treatment plant are located; and
   iii. The eastern portion of the site where materials and dumpsters are stored near the entrance gate.

i. Settling Defendants shall update the SWPPP narrative section to indicate that the relative size of the "shredded ferrous metals," "shredded non-ferrous metals," and "shredded waste materials," may vary.

j. Settling Defendants shall revise the SWPPP map to include the stormwater sampling locations for both Topsham Outfalls 001 and 002.

k. Settling Defendants shall revise the SWPPP map to include all areas where the transfer of bulk materials is conducted.

3. Lewiston Facility SWPPP

   a. During the 2018 EPA site visit conducted in accordance with Federal Rule of Civil Procedure 34 ("2018 EPA Site Visit"), a viscous material was observed under the shear.  When Settling Defendants submit the revised SWPPP in

2

accordance with Paragraph 20 of the Decree, Settling Defendants shall provide documentation, including photographs, showing that the shear baler has been properly decommissioned, including, but not limited to:

    i.  Removal of residual oils and grease on pipes, lines, and hoses;

    ii.  Explanation of how stormwater exposure will be limited; and

    iii.  Measures taken to eliminate fluid leakage.

b.  During the 2018 EPA Site Visit, fluids were observed dripping from a vehicle stored upside-down.  Settling Defendants shall revise the Lewiston SWPPP to describe the procedures used to accept and process vehicles containing fluids, including:

    i.  Document the receipt of such vehicles;

    ii.  Properly drain and dispose of fluids;

    iii.  Minimize contact between residual fluids and stormwater; and

    iv.  Develop a standard operating procedure and provide training for inspecting vehicles for fluids.

c.  Settling Defendants shall revise Section 2.1.4.2 to include that, whenever feasible, vehicle maintenance shall be conducted under cover in an area not exposed to stormwater, consistent with Appendix N.3.3.4 of the Maine MSGP.

d.  Settling Defendants shall revise the Lewiston SWPPP to reflect that they shall sweep:

    i.  the truck scale of the Lewiston Facility on an at least weekly basis unless inclement weather precludes such sweeping; and

    ii.  the paved, concrete, or impervious surfaces of the driveway of the Lewiston Facility, except for the area of the driveway located within ten feet of River Road, on an at least weekly basis unless inclement weather precludes such sweeping.

    iii.  Settling Defendants shall properly dispose of any sediment collected by sweeping.

e.  Settling Defendants shall revise the SWPPP to indicate that snow plowing operations are intended to limit or avoid plowing snow in the direction of Hart Brook.

4.  <u>Oakland Facility SWPPP</u>

a.  During the 2018 EPA Site Visit, four vehicles were observed in the "Miscellaneous Overflow Storage Area" located at the northern end of the site that had oil dipsticks, which indicated they had not been drained of fluids prior to storage.  Settling Defendants shall update the SWPPP to show on the facility site map the specific locations where undrained cars are kept and to indicate in the narrative plan the stormwater pollution control measures used in these areas.

3

b. Settling Defendants shall revise Section 2.2 of Attachment 4 of the SWPPP for consistency with Section 6.3 and Special Condition N.3.b of the Maine MSGP, which indicate that quarterly visual monitoring must be done regardless of whether benchmark monitoring is performed in a quarter.  Settling Defendants shall implement such quarterly visual monitoring.

c. Settling Defendants shall revise Sections 3.1.4, 6.5, and 3.0 of Attachment 4 for consistency regarding frequency of maintenance and inspection schedules.

d. Settling Defendants shall revise 3.1.3, which currently states "essentially no industrial activities" occur in Drainage Area 3.  Material transport is an industrial activity that occurs in this area and must be described in the SWPPP.

e. Settling Defendants shall revise Section 2.3.2 to indicate that runoff from snow melt is a form of stormwater under Special Condition B.17 of the Maine MSGP.

f. As part of revising the Oakland SWPPP, Settling Defendants shall implement the following BMPs at the Oakland Facility:
   i. Describe maintenance procedures for the excavator used in crushing vehicles ("crusher") in the revised SWPPP that minimizes the exposure of stormwater, including snow and snow melt, to metals, solids, sediments, and other pollutants associated with the crusher.
   ii. Establish a containment area for all turnings exposed to cutting fluids with a permanent or semi-permanent cover that prevents exposure to stormwater or establish an indoor storage location.
   iii. Sweep the storage pad area whenever it is cleared of storage materials, unless inclement weather precludes such sweeping. Settling Defendants shall sweep the truck scale on an at least weekly basis, unless inclement weather precludes such sweeping. Settling Defendants shall properly dispose of any sediment collected by sweeping.
   iv. Describe procedures used to accept and process vehicles containing fluids, including:
      1. Documenting the receipt of such vehicles;
      2. Properly draining and disposing of fluids;
      3. Minimizing contact between residual fluids and stormwater; and
      4. Developing a standard operating procedure and providing training for inspecting vehicles for fluids.